**PETERSON, Plaintiff, v. PETERSON, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 659099.   Decided September 3, 1954.

D'Arnold Davis, Jr., Cleveland, for plaintiff.

Thomas C. Begley, J. J. P. Corrigan, Cleveland, for defendant.

## OPINION

By FULTON, J:

The issues in this divorce case were presented by the plaintiff-wife's petition and defendant-husband's answer. The evidence was presented upon these issues.

The parties are cultured people. The husband is thirty-four years of age, the wife is thirty years of age. They were married February 3, 1949; neither were married before. There is no difference in religious training, background, or present religious status.

The husband is an accountant by training. He teaches accounting at Case Institute of Technology. In addition. he does some outside accounting work and from time to time has sold real estate.

There are two minor children. The elder, a son, is aged five, and the younger, another son, is aged three. They are, by the evidence, sturdy, active and energetic. These children presently are residing with the husband's sister. The husband resides with his parents near the sister's home. The husband-father has evening meals with the children, bathes

them and otherwise prepares them for bed. The wife resides in the marital home.

The wife is and has been ill physically and emotionally for some time past. Medical and psychiatric treatment has been furnished. According to the testimony of neighbors, the wife's housework and care for the children have lagged. This is attributed by the Court to her illness and to no other cause.

The husband is—and so demonstrated on the witness stand —a real disciplinarian. This caused him not to be able to handle the problem as well as possible. His failure to do this and his use of physical force and violence—though claimed as slight and explained on the ground of endeavoring to bring the wife "to her senses" and though she retaliated with some force—amounts to gross neglect of duty on his part. On this ground the wife is entitled to the divorce.

By way of passing, Dr. Alfred Bochner, a psychiatrist connected with University Hospitals, and whose diagnosis was a neuroses based on his own findings. but a probable psychosis if based on findings reported to him by the wife's personal physician, testified, in response to a question of the Court, that in his opinion a divorce would be helpful in bringing about an improvement or cure of the wife's present illness.

A divorce will be and is granted plaintiff-wife on the ground of gross neglect of duty.

The marital home is owned in common. It was purchased for about $11,000.00. It is now worth between fifteen and sixteen thousand dollars gross. The balance due on the mortgage to the National City Bank is approximately $8,750.00.

As partial alimony, payable from and out of the real estate, the Court allows the wife an amount equal to three-fourths of the value thereof; this will be treated as lump sum alimony. The payment of this amount will be made possible only by a sale of the premises.

Said real estate is ordered sold in order to pay the wife this portion of the alimony and from the net proceeds of such sale the wife shall receive three-fourths thereof.

The net proceeds shall be determined after deductions from the gross selling price of the following items:

1. The amount due the National City Bank upon its mortgage.

2. Those items of expense, of credit and debit, in connection with the sale of the real estate, including real estate commission, escrow fees and expenses, taxes and assessments in accordance with the pro rations provided by the contract of sale or the escrow instructions.

3. The amount due on a note to the Cleveland Trust Com-

pany, in the original face amount of $500.00, the proceeds of which were used in connection with family household, home, house, and children's expenses.

4. The amount due upon two notes to the husband's parents in the aggregate original face amount of $700.00. One of these notes was dated February 10, 1954, in the face amount of $500.00 and the other was in the original face amount of $200.00 dated April 5, 1954.

5. Water and Heat—$10.35, unless this item is taken into account in the computation and disbursement through escrow.

6. Halle Bros. Co.—$109.50—which represents purchases made for the wife, children and family.

7. Hospital and Medical expenses in the amount of $25.00.

8. Television repairs in the amount of $12.32.

9. Sterling-Lindner-Davis—$7.84.

The court has made the provisions in the next preceding paragraph because it is its view that all debts and obligations should be paid and discharged when the real estate is sold.

The Court thinks that the amount of $350.00 due the husband's sister for care of the children up to July 15th should be otherwise paid and should not be deducted nor should any subsequent indebtedness for these services since July 15th and still unpaid be deducted in arriving at the net proceeds divisible one fourth to the husband and three fourths to the wife.

Doubtless there will be a tax for a capital gain when the property is sold. This gain should be shared and paid the parties in proportion to their allotted shares of one fourth and three fourths as above set forth.

The husband's salary at Case Institute of Technology is $420.00 per month gross from which he has take home pay of approximately $360.00. His outside accounting work for The Warren Engineering Company pays him $50.00 per month. During 1954 the Warren Engineering Company paid him an additional $300.00 over and above the monthly stipend of $50.00 a month. This $300.00 was a fee for setting up the company's bookkeeping system. The husband has also received some extra pay from Case Institute of Technology in the amount of $250.00 for extra work performed. He did earn, and is capable of earning, additional income through the real estate business. The husband is energetic, able and intellectual as well as intelligent. He can with proper effort supplement his instructorship income.

Therefore, based upon the husband's earnings, including his potential earning capacity, the wife is entitled to as additional alimony for her support, and the husband will be

ordered to pay for such support, the amount of $100.00 per month until further order of court, and terminable, in any event, by the wife's subsequent marriage.

This question of support should be re-examined at least annually to determine the need and wisdom of its continuance based upon all factors, including especially the condition of the wife's health and her ability and capacity to earn—she was gainfully employed before marriage. More frequent re-examination of this question is not barred and may be had within the concept "until further order of the court."

The question of custody of the children is difficult. Custody in the mother might be very helpful to her physical welfare even if their residence is placed elsewhere. Here. however, the Court fears that therapeutic and legal principles conflict. The fear is that custody carries the incidents of care, control, supervision, education etc. These fears would be no restraint upon the Court, except as later indicated. since it is strongly suspected that the wife-mother, as in the past. according to the evidence, again will sojourn to and reside with her parents in Youngstown. These parents are fine people. However, they are elderly; the wife's mother is troubled with hypertension and the wife's father is afflicted with a cardiac condition. Children will annoy these elderly people (as this Court knows, children annoy younger and well grandparents).

The mother's illness presently unsuits her for custody. The father's duties demonstrate the lack of time and facilities—conditions quite common to fathers. He therefore is unsuited to have custody.

Custody is granted directly to Mrs. Knapp, sister of the husband, subject to further order. This question too should be re-examined at least annually with the right reserved for further and more frequent re-examination within the concept "subject to the further order of the court."

The Court is not unmindful that Mrs. Knapp has children and demonstrated a degree of feeling against Mrs. Peterson on one occasion of the latter's visit to the children at the Knapp home, and, moreover, she frankly admitted some general feeling as a result of the Court's interrogation. This must not recur. In spite of the foregoing, the custody solution here suggested seems best since Mrs. Knapp knows the feeling of motherhood. She must not interfere with the visitation privileges accorded Mrs. Peterson nor with visits made by Mrs. Peterson. If under the law applied to the circumstances, direct custody cannot be placed in Mrs. Knapp, then the question of custody is referred to the Juvenile Court with the recom-

mendation that it give full consideration to Mrs. Knapp as the custodian. **Sec. 3109.03 R. C.** (**§8005-3 GC**) appears expressly to permit the placement of direct custodianship in Mrs. Knapp, aunt of the children.

The plaintiff-wife shall be accorded liberal visitation privileges while the children are with Mrs. Knapp or elsewhere.

The children shall be with the mother, if she has suitable living quarters, four continuous weeks during the summer, one week during alternate Christmas seasons, and moreover the children should be with the mother on alternate Thanksgiving and Easter Holidays.

When the children are with the mother, the father shall pay for their maintenance an additional $20.00 per week to the plaintiff, or at that rate for less than a full week; and he shall pay full support while the children are in the custody of Mrs. Knapp or elsewhere.

A decree may be drawn which will embrace the suggestions contained in this opinion.